[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 6219 RE: AWARD OF ATTORNEYS FEES
The plaintiffs are individuals who loaned the sum of $175,000.00 to a Connecticut Corporation. Under the transaction the Connecticut Corporation issued notes to the plaintiffs which could not be repaid for a two year period and were convertible at the option of the plaintiffs into shares of the Connecticut Corporation up until the time the notes were paid. The individual defendant, Gruder, used the funds provided by the plaintiffs to purchase another company, a Utah Corporation, and had the name changed to the same name of the Connecticut Corporation. The Utah Corporation then changed its domicile and address to Connecticut. The stock in the original Utah Corporation was taken in the name of the defendant Gruder as Trustee. The original Connecticut Corporation went into bankruptcy and the stock, held by Gruder, was not listed as an asset of the bankruptcy estate. The name of the original Utah Corporation was again changed to Alydaar Software Corporation ("Alydaar") and became successful with respect to the solution of Y2K problems.
Plaintiffs asserted various causes of action including fraud, breach of fiduciary duty and claims based upon the Connecticut Unfair Trade Practices Act (CUTPA) and sought various forms of relief including monetary damages, injunctive relief, declaratory judgments and the imposition of a constructive trust.
The court previously issued a Memorandum of Decision and the detailed facts stated therein are incorporated herein. In that Memorandum of Decision the court found that Gruder, knowingly and with intent to deceive, made numerous misstatements of fact to the plaintiffs and that his conduct constituted fraud and a violation of CUTPA. The court found that the plaintiffs were entitled to damages in the amount of $175,000.00 plus interest and that they were also entitled to attorneys fees. The plaintiffs had initially sought significantly more damages, including a percentage of the stock in Alydaar. However, the court declined to grant other relief sought by the plaintiffs largely on the basis that the plaintiffs were asserting the claims for wrongs committed against the Connecticut Corporation and on the basis that, because of the bankruptcy of the Connecticut Corporation, the plaintiffs did not have standing to assert the claims made.
The plaintiffs have now made application for attorneys fees in the amount of $738,481.87 and disbursements in the amount of $74,895.16 and therefore seek a total award of attorneys fees and disbursements in the amount of $813,377.03. CT Page 6220
The court's normal starting point for determining reasonable attorneys fees is a calculation of a so called "lodestar" figure which is arrived at by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424,433, 103 S.Ct. 1993, 76 L.Ed.2d 40 (1983). "The lodestar should be based on prevailing market rates, for comparable attorneys of comparable skill and standing in the pertinent legal community. Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done. Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories." (Citations and internal quotation marks omitted). Kirsch v. Fleet Street, Ltd., 148 F.3d 149,172-173 (2nd Cir. 1998).
In Steiger v. J.S. Builders, Inc., 39 Conn. App. 32, 38 (1995), the court approved the following guidelines concerning calculation of attorneys fees for CUTPA violations:
 "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved in and results obtained; (9) the experience, reputation and the ability of the attorneys; (10) the `undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards an similar cases."
The defendants assert that the plaintiffs were at all times represented by the three sets of attorneys which resulted in duplication of time and effort. The defendants were represented during the course of the trial by the firm of Wake, See, Dimes Brynicka of Westport, Connecticut, Attorney Mark Isaacs who maintains an office in New York City and is also admitted to the Connecticut Bar and the law firm of Stroock Stroock Lauan, LLP of New York City, particularly attorney CT Page 6221 Melvin Brosterman as primary trial counsel at that firm. Undoubtedly there has been some duplication of effort. The plaintiffs attempted, and for the most part succeeded in having a division of responsibility so that there redundancy of effort was reduced although trial representatives of all three firms were present during the extended trial. While there is some overlap in terms of time spent the court does not believe that the amount of such time is substantial and can be accommodated by adjusting the attorneys fees to be awarded. The court also notes that at least for the trial the defendants were represented by two sets of attorney to wit Koskoff, Koskoff Beider of Bridgeport, Connecticut and Zeldes, Needle Cooper also of Bridgeport Connecticut. The defendants were at one time, however, also represented by a New York law firm prior to the time that Koskoff, Koskoff Beider entered their appearance in the case.
Plaintiffs assert that the entire attorneys fees and disbursements have in fact been paid by one of the plaintiffs, and therefore, the fees would presumptively be reasonable. However, the issue before the court also involves the shifting of reasonable attorneys fees for payment to the shoulders of the defendant.
The defendants also assert that the initial view of the case by the plaintiffs involved an attempt to obtain a percentage ownership in the stock of Alydaar which, the defendants assert, could at sometimes have been as high as $30,000,000.00 depending upon the price of the stock. The plaintiffs assert that it is unreasonable to expend an excess of $800,000.00 in attorneys fees and disbursements in an attempt to collect $175,000.00 plus interest and attorneys fees particularly when the defendants had made an offer of judgment which would have fully compensated the plaintiffs in view of the eventual ruling issued by the court. There is merit to that claim. However, for such an analysis must be balanced against the fact that the plaintiffs successfully demonstrated the existence of actual fraud and that damage was inflicted despite the fact that the court determined the plaintiffs were not the proper parties to assert the claims made.
Attorney Brosterman, primary trial counsel for the plaintiffs, charged an hourly rate of $475.00 per hour and in July of 1998, that rate increased to $495.00 per hour. Mr. Brosterman also testified that those rates are the prevailing rates in the City of New York for someone of his background and experience. It is also true that the individual plaintiff who has paid all the attorneys fees and disbursements also has retained Mr. Brosterman to represent him on other matters prior to this litigation. However, the rates prevailing in New York City are considerably different from the rates here in Connecticut. There is also no basis for the court to conclude that competent attorneys, other than CT Page 6222 Mr. Brosterman, who practice in Connecticut were not available to the plaintiffs. Accordingly, the court finds that the appropriate rate for the defendants to pay for the services of Mr. Brosterman is in the amount of $350.00 per hour. The defendants also assert that the determination for some of the disbursements are not adequate for the court to make a determination as to the appropriateness of the disbursements. While in some cases the disbursements could have been documented in greater detail those amounts in the court's view are not substantial. There are of course certain disbursements such as the disbursement for Steven Goldberg in the amount of $1,863.99 which the court specifically does not deem to be appropriate. Mr. Goldberg, while and attorney, appeared only as a witness on one day and the court does not deem it necessary for him to have sat through portions of the trial over several days.
The defendants also assert that Attorney Brosterman's fee should not be compensated since he did not comply with Rule 1.5(b) of the Connecticut Rules of Professional Conduct because the fee arrangement was not reduced to writing. The court specifically rejects that claim and notes that Mr. Brosterman had in fact represented the client on previous occasions and there is no claim by the client that such fees should not be paid and in fact have been paid. The court also specifically rejects claims by the defendants Mr. Brosterman's fee should not be assessed against him because Mr. Brosterman was also an investor and therefore one of the plaintiffs. This is not a case where we have a pro-se plaintiff. The relationship between Mr. Brosterman and the plaintiffs during the course of litigation was, from what all the court can determine, was, that of an attorney and client relationship. Nor does the court believe that any fees should be reduced because of the fact that associates in New York law offices, who never appeared in court and who never signed any papers submitted to the court, were not members of the Connecticut Bar.
A line by line analysis of the voluminous materials submitted with the plaintiff's request would serve no useful purpose. Accordingly, the court, mindful of the authorities herein stated, determines the award of attorneys fees and expenses as follows:
Amount Requested Fees Disbursements
$739,481.87 $ 74,143.39
Reductions, inappropriate; vague and inadequate documentation (10%) — 7,414.34 CT Page 6223
Deductions in fees for Atty. Brosterman - 59,467.00 
$680,014.87 $ 66,729.05
Duplication of effort (10%) -$ 68,001.49 -$ 6,672.90
$612,013.38 $ 60,056.15
Reduction for results obtained (40%) -$244,805.35 -$ 24,022.46
$367,208.03 $ 36,033.69
The plaintiffs are therefore awarded attorneys fees and disbursements in the $403,241.72, in addition to the damages found by the court in the amount of $175,000.00 with interest pursuant to General Statutes § 37-3a
at the rate of 10% per annum from 1989 to date in the amount of $185,979. 45. Judgment may enter accordingly.
RUSH, J.